IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ALVIN DARRELL SMITH,           :
                               :
        Petitioner             :
                               :
    v.                         :      CIVIL NO. 3:CV-14-597
                               :
U. S. PAROLE COMM'N, ET AL.,   :      (Judge Conaboy)
                               :
        Respondents            :

_____

# MEMORANDUM
## Background

Alvin Darrell Smith (Petitioner) an inmate presently confined at the Allenwood United States Penitentiary, White Deer, Pennsylvania (USP-Allenwood) initiated this pro se petition seeking habeas corpus relief under 28 U.S.C. § 2241 in the United States District Court for the Eastern District of Pennsylvania. The Eastern District of Pennsylvania subsequently transferred Petitioner's action to this Court.

Named as Respondents are the United States Parole Commission (Parole Commission); the Federal Bureau of Prisons (BOP); the District of Columbia Department of Corrections; the Attorney General; and the Mayor of the District of Columbia. This Court previously stated that the USP-Allenwood Warden was the only properly Respondent in this matter. Service of the petition was previously ordered.

Smith was convicted of second degree murder while armed,

-1-

carrying a dangerous weapon, and possession of a prohibited weapon in the Superior Court for the District of Columbia.[1] Petitioner describes his crime as being accidental murder with a knife. Petitioner was sentenced on March 15, 1994 to a fifteen (15) year to life term of imprisonment. Smith indicates that he did not pursue a direct appeal.

The Petitioner is also serving a consecutive eighteen (18) month to six (6) year sentence for taking indecent liberties with a child which was imposed by the Superior Court for the District of Columbia on March 22, 1994.

Petitioner indicates that his present action is challenging the calculation of his sentence, denial of his parole application, as well as the validity of his conviction and sentence. See Doc. 1, p. 3, ¶ 5. According to his Petition, Smith is being detained pursuant to an expired judgment and commitment order. Petitioner vaguely adds that since the "commercial transaction" on the judgment and commitment order is complete he is entitled to mandatory release/parole. See id. p. 6, ¶ 11. Smith further indicates that his sentence is no longer valid because there was no true bill of indictment.[2]

---

[1] District of Columbia offenders such as Smith are considered state prisoners for purposes of the federal habeas corpus statutes. See Madley v. United States Parole Comm'n, 278 F.3d 1306, 1309 (D.C. Cir. 2002).

[2] Smith maintains in part that he completed service of his
(continued...)

It is also alleged that Petitioner was not awarded good time credits which he earned for completion of institutional programs; the BOP improperly calculated his parole eligibility date; and he should have been granted parole in 2005.

**Discussion**

Title 28, United States Code § 2241, vests the federal district courts with jurisdiction to grant a writ of habeas corpus to persons in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241(c)(3).

It is initially noted that the Petitioner's claims of entitlement to federal habeas corpus relief are set forth in a rambling manner which are at times difficult to decipher. Nonetheless Smith's filings have been afforded the liberal treatment which he is entitled to as a pro se litigant. Moreover, the Petitioner has made numerous subsequent supplemental filings, including contentions relating to the conditions of his confinement which are totally unrelated to his pending habeas corpus claims. This Court will only address those claims which seek federal habeas corpus relief and are set forth in the Petition.

**Valid Sentence**

Petitioner initially contends that his judgment and commitment

---

²(...continued)
sentence on January 14, 2010, at another point, he asserts that he has been illegally detained by the Parole Commission since January 5, 2005.

order is illegal because it is not a true bill.  See Doc. 1, p. 7. He adds that "the commercial transaction has to be terminated at the end of sentence imposed completed 1-14-10 parole is mandatory." Id.

Respondent asserts that the vague arguments that Petitioner's life sentence is invalid or expired are meritless.  The argument notes that contrary to Petitioner's assertion that a sixteen (16) year sentence was imposed, he was clearly sentenced to a life sentence with a minimum term of fifteen (15) years.

Based upon this Court's review of the record, notably Petitioner's Judgment and Commitment Orders, it is clear that the Respondent has clearly established that Smith was prosecuted, convicted, and thereafter sentenced to a term of life imprisonment with a minimum term of fifteen (15) years.  There is simply no discernible facts set forth by Petitioner which would warrant a determination by this Court that either of his District of Columbia sentences are illegal.  Accordingly, Petitioner's unsupported contentions that his criminal sentences are invalid or have fully expired will be denied as meritless.

**Parole Proceedings**

As previously noted, Petitioner is serving a District of Columbia sentence which was imposed on March 22, 1994.  Based upon a liberal reading of the Petition, Smith asserts in part that he was improperly denied release on parole.

-4-

Respondent notes that Smith's parole eligibility date was computed by the Federal Bureau of Prisons (BOP) as April 14, 2004, approximately ten years prior to the filing of this action. He was afforded an initial parole hearing on January 27, 2004. A second parole review hearing was convened on February 4, 2009. Smith had a third parole review hearing on March 23, 2010, at which time the guidelines of the former District of Columbia Board of Parole were applied. A parole reconsideration hearing was conducted in March, 2011. Another parole review hearing was held on April 9, 2012 at which tine the Parole Commission denied Smith's parole application.

Respondent argues that Smith has been properly denied parole due to his failure to accept responsibility for his crimes; the violent nature of his crimes especially the abuse of an extremely vulnerable victim, minimal participation in institutional programming; and his refusal to participate in sex offender programming. See Doc. 13, p. 7.

Pursuant to the provisions of National Capital Revitalization and Self-Government Improvement Act of 1997 ("Revitalization Act"), Pub. L. No. 105-33, § 11231(a), 111 Stat. Ann. 712, 745 (effective date Aug. 5, 1998), Petitioner and all other District of Columbia incarcerated felons were transferred into federal custody. Under the Revitalization Act, the District of Columbia Parole Board ceased operation and the United States Parole Commission (Parole Commission) was given broad responsibilities for D.C. offenders

such as Smith.

In Sellmon v. Reilly, 551 F. Supp. 2d 66 (D. D.C. 2008), a decision rendered by the United States District Court for the District of Columbia, it was held that the Parole Commission's application of its 2000 paroling guidelines for D.C. offenders violated the Ex Post Facto Clause. Under Sellmon, the parole review guidelines established by the District of Columbia Parole Board and which were in place at the time D.C. offenders, such as Smith, committed their crimes must be applied.[3]

In 1987, the District of Columbia Parole Board established "point based guidelines to channel its exercise of discretion in deciding whether to award parole." Puifory v. Reilly, 2009 WL 839354 *2 (M.D. Pa. March 30, 2009). Under the 1987 guidelines each D.C. offender was assigned a Total Point Score (TPS) which was used to determine when the prisoner should be paroled or scheduled for another parole hearing. The TPS "did not result in a recommendation of the total time to be served before an offender should be paroled." Id. This revised scoring system calculated a salient factor score for determining risk of recidivism. Specifically, the salient factor score assesses the probability that an offender will live and remain at liberty without violating the law. It is then used in conjunction with points added or

---

[3] Since Petitioner committed his crime after enactment of the 1987, 1991, and 1992 guidelines, all of those requirements are applicable in his case under Sellmon.

-6-

subtracted for pre - and post- incarceration factors, including whether the prisoner's underlying conviction was a crime of violence or involved the death of a victim to form a base point score which corresponds to a suggested period of incarceration for each inmate to serve prior to release (base guideline range). See Jennings v. Hogsten, 2008 WL 191483 * 1 (M.D. Pa. Jan. 22, 2008).

The D.C. Code and D.C. regulations establish that parole decisions are within the discretion of the Parole Commission. See D.C. Code 24-404(a)(stating that when a prisoner meets certain criteria, "the Commission **may** authorize his release on parole")(emphasis added);D.C. Mun. Regs. Tit. 28 § 200.1 ("In accordance with D.C. Code § 24-204 the Board shall be authorized to release a prisoner on parole in its discretion ...")(emphasis added).

It is well-settled that "there is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." Greenholtz v. Inmates of Nebraska Penal & Correctional Complex, 442 U.S. 1, 7 (1979). Similarly, the parole laws and regulations developed by the District of Columbia do not give rise to any constitutionally protected interest. Ellis v. District of Columbia, 84 F.3d 1413, 1420 (D.C. Cir. 1996) ("the regulations do not give any prisoners a liberty interest in parole").

The District of Columbia Court of Appeals has also determined

that habeas corpus review of the denial of parole to a D.C. inmate "is limited to a review of the procedures used by the Board." Smith v. Quick, 680 A.2d 396, 398 (D.C. Cir. 1996). Even if the Parole Commission found that Smith satisfied everything required under the 1987 D.C. guidelines, it still had the discretion to deny parole. Ellis v. District of Columbia, 84 F.3d at 1413, 1415 (D.C. Cir. 1996). Since the Parole Commission was vested with the discretion to depart from the guidelines, federal habeas corpus relief is only available if the parole authorities engaged in arbitrary or irrational decision-making.

Thus, this court's review is limited to an abuse of discretion standard. A federal district court needs only to consider whether the record provides a rational basis for the Parole Commission's ruling. Gambino v. Morris, 134 F.3d 156, 160 (3d Cir. 1998). It must ensure that the Parole Commission has followed appropriate criteria and that its "decisions are neither arbitrary and capricious nor based on impermissible considerations." Id. (citation omitted).

Furthermore, the Third Circuit Court of Appeals has noted that, when the Parole Commission issues any written determinations, it "must reveal reasoning and not simply present conclusions, at least where the reasoning is not apparent from the facts of the case." Marshall v. Lansing, 839 F.2d 933, 943 (3d Cir. 1988) (emphasis in original); see also Greene *v*. United States Parole

Comm'n, 749 F. Supp. 650, 654 (M.D. Pa. 1990). The Court of Appeals in Marshall added that "Congress has required the Commission to furnish a statement of reasons to the prisoner so that he can receive 'an understandable explanation of his parole status.'" Id. at 942 (citations omitted).

In the present case, the Parole Commission considered factors such as the gravity of Smith's criminal offenses (murder of one victim and the sexual abuse of a second, eight year old victim), his lack of accountability, and his failure to complete sex offender programming.

The 1987 D.C. guidelines afford substantial discretion in granting or denying parole. Ellis, 84 F. 3d at 1416. Second, the factors listed as to be considered when denying parole is non-exhaustive. Moreover, the Parole Commission can use the nature of a D.C. prisoner's conviction as a basis for exceeding parole guidelines, even if the conviction was used in his sentence computation pursuant to the guidelines. See Muhammad v. Mendez, 200 F. Supp.2d 466, 473 (M.D. Pa. 2002); Jennings v. Hogsten, 2008 WL 191483 * 4-5 (M.D. Pa. Jan. 22, 2008) (consideration of similar factors to those relied upon in the present case such as the applicant is a more serious risk than his TPS indicated as grounds for an upward departure are within the discretion afforded the Parole Commission and provided a permissible rational basis to exceed the guidelines).

This Court notes that Sellmon arguably recognized that offense accountability is an impermissible basis for exceeding the recommended range of service. See Sellmon, 551 F. Supp. 2d at 88. Rather, "the parole decision should be limited to consideration of the offender's risk of recidivism and institutional conduct." Cambrel v. Bledsoe, 2011 WL 3439199 * 10 (M.D. Pa. Aug. 5, 2011).

Factors such as involvement in institutional programming may be properly considered when making parole decision for District of Columbia offender. Hunter, 2011 WL 4528469 * 7. Moreover, the 1987 D. C. guidelines includes as factors "countervailing a recommendation to grant parole ... whether the offender had the opportunity, but made little or no effort toward rehabilitation or preparation from remaining crime free if released to the community; and the offender needs programs and/or rehabilitative services to minimize risk to the community when actually released on parole." Ellis, 84 F.3d at 1416.

Smith's failure to complete institutional programming addressing the underlying cause of his sexual abuse conviction is listed as being a factor behind the adverse decision. The nature of Petitioner's violent offenses was also considered. Notwithstanding any incorrect mentioning of Petitioner's refusal to accept responsibility for his criminal conduct, the Parole Commission cited permissible and legitimate reasons for denying parole, namely the failure to participate in relevant sex offender

programming and the nature of his violent offenses.  Those factors were properly considered by the Parole Commission and constituted a rational basis for the conclusion that Petitioner posed a risk to the community if released.

Finally, it is noted that the challenged adverse parole determination was set forth via a written decision which clearly and concisely provided Smith with a rational basis underlying its adverse determination and an understandable explanation as to why he was being denied parole.  See generally Furnari v. Warden Allenwood Fed. Corr. Inst., 218 F. 3d 250, 254 (3d Cir. 2000). Pursuant to the above discussion, Petitioner is not entitled to federal habeas corpus relief with respect to the denial of his parole claim.

**Sentence Computation**

Petitioner also contends that he was not awarded good time credits for completion of institutional programs and that his parole eligibility date was miscalculated.  See Doc. 1, p. 9. Smith vaguely adds that he is being improperly confined under a warehouse receipt.

As previously discussed, Smith's parole date was computed by the Federal Bureau of Prisons (BOP) as April 14, 2004.  He was afforded an initial parole hearing on January 27, 2004 and had subsequent parole reviews on February 4, 2009,  March 23, 2010, March, 2011, and April 9, 2012.

-11-

According to documents submitted by the Respondent, Petitioner was awarded seventy-nine (79) days in accordance with the District of Columbia Code of sentence credit for time spent incarcerated. The Petitioner was also awarded 1,980 days of good time credit and District of Columbia Education credit from the minimum term. See Doc. 13, p. 9.

Based on this Court's review of the record, Petitioner was afforded with sentence credit for all time spent incarcerated as of the filing of this action. Moreover, documents provided by the Respondent show that Smith was awarded all good conduct time which he earned prior to the filing of this action. The Petitioner has not presented this Court with any fact which could support a determination that he is entitled to an award of additional good time credits. Accordingly, Petitioner's vague claim of improper sentence computation and failure to award good time credit will be denied.

## **Exhaustion**

Respondent also argues that Petitioner's claims relating to the issue of improper sentence computation should be dismissed for his failure to exhaust administrative remedies. See Doc. 20, p. 19. It is suggested that although Smith initiated more than 500 administrative grievances while incarcerated, he did not properly fully exhaust any regarding his pending claims that he is being incarcerated on a warehouse receipt, denial of good time credits,

or improper calculation of his parole eligibility date. See id. at p. 21.

A party is required to exhaust administrative remedies before seeking relief in federal court unless Congress has indicated to the contrary or the available administrative remedies are inherently inadequate. Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 760 (3d Cir. 1996); Young v. Quinlan, 960 F.2d 351, 356 (3d Cir. 1992). In a subsequent ruling, the Court of Appeals for the Third Circuit affirmed the dismissal of a § 2241 petition that had been filed before administrative remedies had been exhausted. Ridley v. Smith, 179 Fed. Appx. 109, 111 (3d Cir. 2006).

Exhaustion is only excused where pursuit of administrative remedies would be futile, the agency's actions clearly and unambiguously violate statutory or constitutional rights, or the administrative procedures would be inadequate to prevent irreparable harm. Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988). Unless it would be futile to pursue administrative remedies, courts have rejected attempts to obtain judicial relief by prisoners who have disregarded the administrative remedy process. See Ramsey v. United States, No. Civ. 1:CV-05-1476, 2006 WL 1412767 at *1 (M.D. Pa. May 22, 2006)(Caldwell, J.); Porte v. Warden, FCI-Allenwood, No. Civ. 4:CV-04-1534, 2006 WL 47654 at *3-5 (M.D. Pa. Jan. 9, 2006)(Jones, J.).

The BOP has a well established three (3) step Administrative

-13-

Remedy Program whereby a federal prisoner may seek review of any aspect of his imprisonment. See 28 C.F.R. §§ 542.10-542.19. After attempting to informally resolve the issue, a BOP inmate can initiate the first step of the grievance process by submitting "a formal written Administrative Remedy Request, on the appropriate form (BP-9)," within twenty (20) calendar days "following the date on which the basis for the Request occurred." See 28 C.F.R. § 542.14(a) (1998). The Warden has twenty (20) calendar days from the date the Request or Appeal is filed in which to respond. Id. at § 542.18.

If not satisfied with the Warden's response, an inmate may appeal (step two) on the appropriate form (BP-10) to the Regional Director within twenty (20) calendar days of the date the Warden signed the response. Id. at § 542.15. Finally, if the inmate is dissatisfied with the Regional Director's response, that decision may then be appealed (step three) on the appropriate form (BP-11) to the General Counsel within thirty (30) calendar days from the date the Regional Director signed the response. Id. Additionally, "[i]f the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." Id.

The undisputed record shows that Smith was quite familiar with the BOP's administrative remedy procedures as the inmate initiated over 500 grievances while in federal custody. It is equally

-14-

apparent that Petitioner initiated this federal habeas corpus action before fully resolving his arguments of improper sentence computation via a properly submitted final administrative BOP appeal. There is no indication in the record that it would be futile for Petitioner to fully exhaust his administrative remedies or that federal officials would not have acted on his administrative appeal in a timely manner, and none of the other exceptions outlined in Lyons exist.

Based upon those factors, Smith has not demonstrated a sufficient basis as to why he should be excused from the exhaustion of administrative remedies requirement. Dismissal of the sentence computation claims for failure to exhaust administrative remedies is also appropriate.

**Conclusion**

For the reasons ser forth herein, the request for federal habeas corpus relief will be denied. In light of the Court's determination, Petitioner's latest motion seeking preliminary injunctive relief (Doc. 84) will be dismissed as moot. An appropriate Order will enter.

> S/Richard P. Conaboy
> RICHARD P. CONABOY
> United States District Judge

DATED: OCTOBER 11, 2018